Good morning. Judge Griffith will be participating in the oral argument by telephone so you may direct questions to him if you wish and he may have some for you. Good morning and may it please the court. My name is John Putnam and I represent the City of Phoenix, Arizona. I wish to reserve a minute of my time for rebuttal and will be sharing three minutes of my time with Council for the Historic Neighborhood petitioner, Mr. Adams. In 2014, FAA changed decades of flight patterns in the City of Phoenix by moving flight routes from industrial and agricultural areas to historic neighborhoods. And when did it do that? It did that on September 18, 2014, Your Honor, when it published routes in the Federal Register and also at that time actually started flying aircraft on that route. FAA departed from its own practice and legal requirements to avoid public review and implement these changes more quickly. When the new routes resulted in intense public scrutiny and controversy, FAA told the City that it had underestimated the noise impacts associated with the routes and was looking at changes to affect those concerns. So since the City knew that as of September the routes had changed, wasn't the City obligated to file a petition within 60 days if it wanted to challenge the new routes? Excuse me, I don't believe it was, Your Honor. In this circumstance, within 60 days, in fact even within 30 days, FAA told the City that it recognized that the noise impacts were greater than it expected and that it intended to listen to the community and listen to the City and go about a process to evaluate possible changes. It didn't change anything, the fact that they said we're making some changes. Nonetheless, their September 14 decision is what's governing at this point. Don't you have the obligation to file within 60 days if you're objecting to that action? Your Honor, we also have an obligation to exhaust administrative remedies and only bring in action when it's final. So what action did you take during 60 days? The first action that we took within 60 days was to hold a joint public hearing and meeting with the FAA in the community at which FAA heard from the public, heard from the City and indicated that they would get back to the City about next steps. Before the 60 days elapsed, the FAA sent a letter to the City of Phoenix and told the City that it would be evaluating changes and that, in fact, it actually did make a change in November 2014 before the 60 days elapsed and intended to move forward. So let me ask you, were you relying on any regulation or guidance from the FAA indicating that it had an exhaustion requirement or it had a reconsideration procedure? At the initial stage, Your Honor, the primary reliance that we had was on FAA's commitment from the regional administrator, you know, a high-level official within the FAA, that they were going to be evaluating and making potential changes to these documents. Subsequent to that point in January... To what documents? The flight plan? To the flight routes, which were essentially maps. Right. Okay. I'm just trying to understand the City's thinking here when it knew that the FAA had made a decision on the flight path that they had actually implemented them and that the City was representing that, in fact, some of the assumptions that the FAA had made were inaction. And subsequently produced a lot of information raising questions about some of the procedures that were used. But I'm trying to understand what did the City think it could achieve when the regional administrator and others were saying things like, well, it looks like maybe we made a mistake. Those aren't his words, but in effect. In other words, doesn't that happen all the time with agencies? Not all the time, but an agency promulgates a rule, they get new information, they realize maybe they ought to reexamine this. But it doesn't eliminate the rule until they change the rule. And don't parties have to abide by the statutory time limit if they want to challenge the rule? So in this case, Your Honor, I think while that often does occur, the degree to which the agency got this wrong I think was unusual. And the fact that so very quickly the regional administrator of the FAA committed to the City that it would be undertaking a process to make changes and actually made those changes within 60 days instead of others maybe forthcoming. So the changes it made, correct me if I'm wrong, were that it discovered what was going on with the planes actually flying and that they were not necessarily flying in the correct path that the September 14th map required. So the FAA required the planes to follow the September 14th maps. So there was no change in the September 14th. It was just a conformance with September 14th. Isn't that correct? So it was a change because there's not just the map with the route but also procedures that the airlines and the pilots and the air traffic patrol have to follow associating with those. There was a change in the procedures that they identified. The FAA has not been clear and we've not been able to determine from this record or through FOIA requests exactly what that change was. But you're absolutely right. The intent was to try to get those aircraft back on the route that they should have been flying. I think it's a little hard to say that that is a change, that that's a new final decision in which your 60 days would start running over. And it is not doing anything, faithfully at least, other than reiterating this is what we meant at first. So, Your Honor, under the precedent of this court and, for example, City of Damien Beach, the extent that they make a decision, even an informal decision, that affects the way that aircraft are actually being flown has a practical effect in the real world, that does make a difference. The way that their procedures were working were not keeping aircraft on that route. They were actually diverting off that route and even more over the historic neighborhoods than the route would be otherwise. I think that's what Judge Rogers said, that that's not a change. It's just a reiteration or a push for what they've done already in September 14th. It's a change in the procedures, Your Honor, because their procedures originally were not adequate to keep the aircraft. Do you know if that would mean that we could review the procedures today with a different 60-day standard than it was from September 14th? So, Your Honor, I believe that the final decision came much later in the process when FAA had gone through its administrative process, including eventually the invocation of its Order 7100.40A, which provides a formal procedure for reevaluating these routes and potentially mitigating problems and concerns with those routes. Is that your Stage 5 argument? That's correct, Your Honor. Just so I'm clear. So, you're reading that to mean that what happened on September 14th is somewhat preliminary. They're final in the sense that they will stay in effect unless at Stage 5 the FAA's evaluation shows that changes need to be made. If it does be Stage 5 and decides no changes need to be made and advises the people who are interested, namely the June letter, then you think the 60 days starts from that point? I do, Your Honor. And there's two pieces. One, Order 7100.41 does provide that process and does allow for changes of routes to address concerns. The administrator of the FAA advised the city of Phoenix that that process would be used to address noise concerns that the city might have. So, the city had reasonable grounds, like in paralyzed veterans or other decisions of this court. So, let me just ask you, when did they tell you that? Was there a letter or something? There was a letter from the administrator of the FAA, Michael Huerta. And which letter? Is that the January? That was the January letter that went to the city at that point where they said, we're going to consider noise as part of this process and you, the city, will be an important part of that process. As part of Stage 5? As part of Stage 5, that post-implementation analysis done through what was known as a performance-based navigation working group. The other piece that's important, I think, to understand is that one of the substantive concerns that the city has identified is that the National Historic Preservation Act has a provision that requires reconsultation and mitigation to the extent that impacts are discovered after the original implementation of a particular decision. That can't happen before a decision is implemented. The city asked for that reinitiation in February of 2015 when it collected data. It provided over 10,000 pages of information to the FAA regarding noise data, regarding the quiet in those neighborhoods and the importance of quiet to those neighborhoods from a historic perspective. FAA never responded to any of that information, any of those concerns. We believe that's one of the core violations in this case. A very open and shut question of administrative law, if they have an affirmative obligation to do these things, evidence is presented to them, and they ignore that information, that's about as simple a case of arbitrary and capricious behavior. Let me ask you, as to your Stage 5 argument, in its brief, the FAA basically tells us the way it interprets its guidance. Stage 4 is the last step. And Stage 5 is sort of this typical, let's look at what happened and evaluate, and then if we see we need to make changes, we'll go back to the drawing boards and come up with a new final order. What's your response to that? So I have three very quick responses and see that I'm out of time here. The first is that's inconsistent with what the administrator of the FAA said at the time to that January letter, that it would be addressing noise and would be potentially making changes to flight tracks. FAA's current position is a post hoc rationalization from counsel, which this court generally will not consider. Second, the provision of the order itself, and if you take a look at addendum page 94, you'll see pretty clearly that it identifies the potential for addressing any causes or concerns that are identified in that Stage 5 in any amendments. And third, they still have a legal obligation to address that issue under the Part 800 regulations implementing the National Historic Preservation Act. And with that, I'll turn it over to my colleague, Mr. Adams. Thank you. Good morning, and may it please the court. Matthew Adams for the Historic Neighborhood Petitioners. We share the city's position on a number of the issues already addressed, but there are two additional issues where our position is somewhat distinct, and with the court's permission, I'd like to start with those. First, on the jurisdictional question. So there's a clear difference of opinion between the city and the FAA as to who said what to whom and when, but there's no doubt that the Historic Neighborhood Petitioners were not involved in any of those discussions. From October 2014, when the FAA first made representations that it would change the new routes or explore adjustments, as Mr. Putnam said, until June of 2015, when the city filed its petition for review, we reasonably understood that the new routes remained subject to change and that the FAA and the city were working on that. So let me just see. What was the significance of your first sentence, that your organization was not involved? Involved when and what? So much of the communication between the city and the FAA took place in a series of letters, which are in the administrative record. Right. The Historic Neighborhood Petitioners were not involved in that. We don't know what representations were made to whom or when. There were, however, two distinct points during that. All right, but was your organization aware of the September 14th change? We were, Your Honor, because they were flying directly over our homes. Precisely. Yes. So why weren't you obligated to file within 60 days? Particularly when you were not involved in the communications between the city and others and FAA representatives. So although we were not involved in the letters back and forth, there were two distinct points where the FAA and the city made specific representations to us, and those were in two public meetings. The first was in October of 2014, October 16th, so this would have been about 30 days after the planes started flying, well, 28 days. And the FAA came to the City of Phoenix City Council Chambers, acknowledged the community concerns, and it said, we're going to work with the city to explore adjustments to these routes. I'm not sure how that helps your jurisdiction. You still have to be within 60 days of the final order. And if you are or are not involved in whatever's going on after the final order, do you have your hand up at all? So, Your Honor, we believe these are reasonable grounds supporting a later filing date for us. In other words, All right, so you've got the October meeting, and what's the second one, just unclear? So December 16th, 2014. All right. This is the meeting at which the FAA regional administrator came to the City of Phoenix and said, the process was not enough, we didn't anticipate this being as significant as it was, and committed to continue working on this. And, Your Honor, I see that I'm running a little bit low on time. Please continue so we get to your position. Sure. But it's important to note that the city council, at that meeting where the FAA appeared, passed a resolution directing its staff to work with the FAA to return to the original routes, and that's at Joint Appendix 772. So those are the things that we were aware of. And so based on those two data points, we had reasonable grounds, we believe, for a later filing date, particularly under this court's decisions in safe extensions and paralyzed veterans. Unless Your Honor has further questions on that, I'll just briefly touch on the merits issue on which we differ slightly from the city, and that is the issue of public controversy. The FAA proceeded on a categorical exclusion. Categorical exclusion can't be used in extraordinary circumstances. FAA Order 1050.1E says that one such circumstance is the existence of significant controversy on environmental grounds. But if you look at the administrative record of the agency's analysis before the planes started flying, there's no evidence of any real consideration of this. In fact, there's an acknowledgment that local citizens and community leaders were not aware of the new routes. And then, as Mr. Putnam says, there was an outpouring of public controversy immediately after the planes started flying. And although the FAA subsequently reevaluated and issued a couple of errata to its initial environmental analysis, none of those reevaluations properly addressed the public controversy that is indisputable. Your Honor, I'll reserve whatever time is remaining. Yeah, we'll give you some time on rebuttal. All right. All right. Counsel for the FAA. Good morning, Your Honors, and may it please the Court. My name is Lane McFadden. I represent the federal respondents. With me at counsel table is Ms. Jessica Rankin of the Federal Aviation Administration. The Federal Aviation Administration's final order in this case, implementing the routes and representing its conclusions as to all of its environmental review and all of its safety and technical review of these procedures, was issued in September 2014, and nothing in either the briefs or the argument presented to you today undercuts that. Well, let me just ask a couple of things here. September 14, as of that date, there had been no communication between the FAA and the city advising the city of these routes other than through a low-level employee who said, A, he had no authority to speak for the city, and B, through, or at least one in the same, the state officials. And your position in your brief is the FAA had no obligation to contact city officials. Is that correct? Not entirely, Your Honor. All right. So what was your obligation to contact city officials before September 14? The only regulatory obligation to consult with the city comes from the regulations implementing the National Historic Preservation Act, which is under 36 CFR 846. And so what did you do? So the city's aviation department representative. Right. That's a low-level employee. Well, that is the explanation given to us now after the fact. Well, who was he? He was the noise abatement specialist who worked for their aviation department. He was specifically contacted because the concern that we anticipated the city would have would be about aircraft noise. And so we consulted with the aviation department and with the airport authority, the two components of the city that FAA reasonably believed would know the most about aircraft noise. And the assumption was he would notify his boss? Yes, of course. Well, I'm just asking. Yes, that was the assumption. He would then notify the city officials, I mean, the mayor or the city council? Well, so consider it from FAA's perspective. The city's representative was involved in the design of the procedures in 2012, and in August 2000... Who was that? The same aviation department employee, Mr. Davies. And could I just be clear so I know? What level is this employee? In other words, if you were to look here in D.C., they have a noise unit, but it's not a policymaking unit. Sure. I mean, I don't know the specific answer to your question. No, but I'm trying to draw the distinction between a bureaucrat who has no policymaking authority and someone who can give you numbers and data because that's his or her area of specialty. I think if Phoenix's government works the way that D.C.'s government does, the only people with ultimate policymaking authority are either the mayor or members of the city council, and everyone below them would qualify as a bureaucrat. So when the FAA is deciding to change flight paths for good safety reasons, why wouldn't the statutes and your own procedures contemplate notifying policymaking officials? Well, they don't, Your Honor, and I think it's because that's... It's self-operation. All of a sudden you wake up and the plane's flying over your house and you didn't even know about it. But the FAA's burden isn't to understand the inner workings of each local government with which it interacts. No, but you admit it has an obligation to consult with the city, and you're interpreting the city to mean a low-level official with no policymaking authority. I just want to be clear about that. The specific regulatory obligation is to consult with, quote, a representative of the local government jurisdiction over the area. But this person told your client he had no authority to speak for the city. No, Your Honor. That statement was made after the FAA's final order. It was made by other members of the city who said retroactively this person didn't speak for us. There was no representation made to the FAA from August 2013 when the entirety of the environmental review was provided to the city's aviation department. Through the next 13 months before the procedures were implemented, the city said nothing to the FAA, objecting to or raising further questions. But you understand what I'm getting at. Yes, Your Honor. Congress passes all these statutes saying, you know, affected people should be notified so that their input can be considered before the agency makes a decision. And you can interpret that in a way that says, yes, we let the janitor know, or yes, we let the low-level bureaucrat know. But the rest of the city is totally oblivious to this plan. And the first notion it has is when they hear these claims come. Well, the question is whether that is the fault of some failure on the FAA's part set by its legal obligation. If we had had to make... Well, what I'm trying to understand, though, is what the FAA thinks is its legal obligation where Congress has passed a statute that talks... At least one way to read it is to notify the officials who can speak on behalf of the city and represent its position to the FAA. Why isn't that... Your Honor, many of the public notification provisions you're talking about apply in circumstances other than these. They apply where there's a potential for adverse effects. You told me when you started that the National Historic Preservation Act required you, required your clients to consult with the city. That's where we started. Right. So I'm trying to understand how you're interpreting that statute by Congress in terms of the FAA's obligation to provide prior notice. Well, two points of clarification. The local government consultation requirement is regulatory. It doesn't come from the statute. Well, you told me you had an obligation to, I wrote it down, to consult the city under the National Historic Preservation Act. The regulations implementing that statute, yes. So 800.2C3 requires us to contact a representative of the local government, which we believe the... So what do you think Congress meant? I just want to be clear about that. What do you think Congress meant? Is that conventional language or is that... That is regulatory language. And what does the statute say? The statute doesn't specify the mechanisms of consultation. What does it say? I don't have it in front of me. All right. But I'm going to look at it. Okay. But, I mean, my point is that if the statute, and I'm just looking to see if I have it handy, says... Anyway, we'll get to that. So the agency comes up with a regulation that says obligation to consult with the city. Obligation to consult with a representative of the local government, yes. A representative of the local government. Right. And is that a representative who can speak on behalf of the local government? There's no more language in the law requiring... But this is what I'm getting at. You notified somebody who has no authority to make any representation on behalf of the city as to what its position would be regarding this new flight plan. You got data from this person who I'm assuming, you know, would naturally give the agency the data he had. Well, if you indulge me a moment to explain what occurred in this scenario. The city was present through the aviation department at the big meeting where the procedures were initially designed in 2012. Then there was a lot more work done. So you say you don't know who from the department was represented. Is that correct? No. This is all, if you look at JA 1120 and the following pages, the names are all given. Primarily it was a gentleman named Jim Davies who was the noise abatement specialist at the city's aviation department. That's the same person we've been talking about. The non-policy-making person. Are you aware of anyone above that person who had specific responsibility partnered with an aviation concern? No. So you're not aware of anybody above that person? No. He had supervisors. He was eligible to consult with that person, right? That's right, Your Honor. And if you look at, for example, JA 307 where we provided the aviation department with all the environmental, Your Honor has suggested the city provided the FAA data. It was actually the other way around. We gave them all of our information, specifically a Google Earth file with all of the exact locations of all the anticipated noise impacts, exactly where they'd be in the city and how big they would be and what they would look like. And he wrote back to say, thank you, I'm sharing this with the city's NEPA specialist to ensure that everyone in the city with knowledge in this area has been consulted. And then the only times we heard back from the city. I know he said he was going to send it to the NEPA specialist. Did he say that last phrase as well? He may not have. Yeah, I thought that was an elaboration by Kelly. Sorry, I apologize. No, I mean, that's serious. We're trying to understand what happened. He said he was going to pass it on to the NEPA specialist. He didn't say anything about so the city officials would know what was going on. No, there was never any discussion of his chain of command. It was staff to staff. That's right. And so, of course, after the fact, we discovered that none of the proper people above him had been informed up to the highest decision-making levels of the city. But we had no indication of that at the time. So I just need to be clear how this federal agency is proceeding. Where its own regulation, you tell me, say it has an obligation to consult with the city and its interpreting this means it can consult with a non-policy-making person. In other words, it's a data-gathering obligation. It's not an obligation to notify public officials of the agency's action, proposed action. Two points on that, Your Honor. I mean, first of all, the regulations are not, by the way, promulgated by the Federal Aviation Administration. These are the advisory council's regulations that govern all federal agencies when they're applying the National Historic Preservation Act. But in those regulations, farther up the page, make very clear that the extent of consultation and the amount of effort put into consultation must be proportionate to the anticipated impact. And here, throughout the process, from the very beginning to the point where the procedures were implemented, all indications to the Federal Aviation Administration was that there would be no adverse impacts because the noise impacts were so low. They were low, low, low. So let me ask you, do you live in this region? No, I do not. Ah. If you lived in this region, you would know that noise from airplanes is a sensitive public issue. I'm sorry, Your Honor. I live in this region. I thought you meant whether I lived in Phoenix. Sorry. I'm aware of the concerns about aircraft noise in D.C. So what may be five decibels of an increase on a chart may not be viewed in the same way by the residents living in the area. Oh, there's no dispute about that. All right. And the position the petitioners have taken is that the FAA's entire way of measuring noise is wrong precisely because some people are more sensitive to it than others and it can be disturbing to some people. No, I understand your point about they don't actually challenge your methodology here. And because of that, the regulatory standards for what noise is significant and what noise is adverse control here. And so once you apply the methodology that they do not challenge, the agency has fulfilled its legal obligations. If the results are such that there's no anticipated significant environmental impact, which was true here, and no anticipated adverse effect on historic properties, which was true here, so the agency has fulfilled all of its regulatory obligations in that context. If there had been bigger impacts, there would have been more consultation required and the burden on the agency would have been greater than it was in this circumstance. So moving after September 14, what I hear being said, and this is my language, not petitioner's language, they were lulled into believing that the FAA was taking its concerns seriously and was not simply going to de-fix them, but was going to substantively address them. And so they had these relationships and meetings and letters, and it's that lulling that caused them not to rush to court, but rather to try to work with the agency. And at the point it was clear that the agency was not going to address these claims seriously as they had thought, then they did come to court. That is their description of events, Your Honor. The dates they gave you where they were lulled, as Your Honor put it, for the historic neighborhood petitioners, the latest one was the public meeting of December 2014. So let's accept their theory that that gave them reasonable grounds not to sue 60 days from September, and they were obligated to sue 60 days from December when they saw no changes to the procedures and no further information from the FAA forthcoming. The city had much more formal contact with the Federal Aviation Administration, and it received letters from us in January making very clear not only that we were not going to undo the old procedures, but we were not going to revisit consultation under the National Historic Preservation Act. We were not going to reconsider the environmental review of these procedures. They were most certainly on notice of what they now claim is their position that we should have reconsidered in January. Could the city not reasonably have read the January letter to say the FAA has decided that in the interest of safety, flight plan changes are necessary. So we're not going back to the situation we had before September 14th. But on the other hand, we are, i.e., the FAA is open to consider adjustments to the flight paths or the timing or whatever. The letter importantly says one additional thing, which is that if the FAA considers adjustments, when it implements them, they will be the part of a new process and a new decision-making activity that will lead to a new final agency action. The previous action is done. It is final and has been final. And we were happy to talk about future decisions that the agency might make. There is a possibility of future proceedings if circumstances are changed or new circumstances are replicated. That's right, Your Honor. That had been always our position that that could happen in the future. You could challenge those changes, but certain procedures are final. If an act is going to court, the city and the Historic Preservation Association should have filed a petition for a new rulemaking? They could have done that, but they also had to file a petition with this court within 60 days. No, I'm supposing they decided not to do that. If that is what happened, they decided not to do that. Then they could. Well, they are in court now. They could have gone to the agency and filed, I don't know what the formal term is, but a request for a new rulemaking? I suppose they could have done that. No, I'm trying to think about it. Practically. Right. That's what I think I was asking you. Yeah. Yeah. I suppose they could have done that. We've just had these regulations in effect, or flight plans in effect for years, and they come in and say, look, aircraft are bigger now, they're flying at different times, we need a new set of flight plans. Is there a procedure by which they could get a new... I thought I understood you to say they could petition for a new rulemaking or some new process. Well, the reason I hesitated in relation to the question is there aren't FAA regulations that provide a process for that. There's no... They did send us a letter asking us to reconsider, but there are no regulations covering how to respond to that. Is there a formal procedure set forth for how they could do that? Correct. So, since the regulations don't provide for reconsideration, they don't provide a process for filing a petition for a new rulemaking, what is a city supposed to do? It should come to the court. Ah. Whoa, whoa, whoa. Whoa, whoa, whoa. I know. They've been around for years. The 60-day rule is not involved. They simply are raising the circumstance that under present circumstances, these flight plans are no longer... They are now too noisy, too unsafe, or too whatever to be in effect. Is there not some other way they can get the agency to think about the problems and how to fix them? Well, the agency... See if they're there? If, for example, the environmental impacts have changed over the years... Yes. ...the agency has obligations outside of some regulations to reconsider or to revisit in light of new information... Is there a way in which the city could get them to do that? Well, the city could ask them to do that, and if the FAA declined, there would be judicial review, I think, of the question of whether the FAA had appropriately decided this was not new information requiring reconsideration. No. What we have is a situation where there is sort of a black hole, and it's not clear what an effective party is to do in order to bring the agency to reconsider. And yet, what the record shows here is that the city wrote letters. It submitted information, and there was a response by FAA. It participated in meetings. It even went to the city council, and then it set up this new working group. So, aren't those actions by the FAA sufficient in the absence of any procedural requirements promulgated by the FAA to stay this 60-day period until the FAA says, you know, we've looked at your information, and we're not going to make any changes? At that point, then they come to court. That, Your Honor, would be a much broader reading of the reasonable grounds provision that this court has ever before held. Well, have we ever had a situation where the agency hasn't had some sort of regulatory scheme that gives notice to the public about how to proceed in order to get the agency to reconsider an order it's issued? Well, I don't know, Your Honor, but the question is whether the effective parties have any provision for how to get relief from, to get judicial relief, and that is very clear. Right? That's the provision for review provision in 46-110A. If they want the agency to do something else, and it depends on the specific nature of what they're asking the agency to do, but if they want them to stop doing what they had previously decided to do, that is a matter for the courts, and Congress is very clear that it's a very short statute of limitation. The reply recites this court's recent opinion in National Federation for the Blind, where there was, the National Federation for the Blind said that there was some ambiguity about what court to go to, and they were late to this court by 11 days, and this court held that if that is the case, the only appropriate course of action was to protect yourself by filing in both courts simultaneously. This court has routinely, in reasonable grounds cases, held that you must preserve your rights for judicial review first, and then you can worry after the fact about what other recourse you might have from the agency. The same holds true here. The appropriate course of action is to file a petition for review, and then after you've done that, you can still talk to the Federal Aviation Administration. There are numerous examples of that occurring right now at other airports in the country. So as soon as the city started talking to the FAA employee, that employee should have told the city, can't talk to you, can't do anything, go to court. I don't think that was the FAA employee's responsibility, Your Honor. It was incumbent on the petitioners to know. Well, if I had been in the legal office, and I went to look to the FAA's regulations, I wouldn't have found anything. Right. Because the judicial review provision is in a statute, and the city attorney's office could easily have looked there, and it says very clearly, you have 60 days from the order issue. Right. So when the... I mean, I'm just trying to understand what's going on here. The FAA is taking a view that it has no responsibility to notify policy-level-making officials who live in the jurisdiction that will be directly affected by an order issued by the agency. It is taking that position specific to circumstances such as these where there was no significant environmental effect, no adverse effect on historic properties, no effect of any kind. Go ahead. But it did notify the relevant departments of the city. It certainly did. With that respect, who the individual is in those departments, it noticed that. That's correct. And received no complaints back from that person or anyone else at the city indicating there were any objections of any kind for more than a year. The FAA was never given any indication that more was asked of it from the city. It certainly would have responded if it had been. Well, if the city had known. I understand your point, but I'm trying to understand what it means to notify an affected party. That requirement varies depending on the level of anticipated environmental effect, and you have before you a case of the very lowest possible anticipated environmental effect, one that triggers no obligations of your department. Suppose there were a law of effect here. Is there anybody other than those departments that you would have notified anyway? I don't think we would have been required by law to, but there would have been public notice requirements, and I think you would expect, as a practical matter, the Parks Department or the Historic Preservation Officer to show up to those meetings and get involved. But in this situation, we didn't have to identify those individuals separately, look them up, and try to seek them out. The obligation was to find a representative of the local government who understood this subject area, and that was certainly the person that the FAA talked to. The court has no further questions? Yeah, I do have one further question. What about this June letter? Does that have any effect in the nature of a final decision by the agency such that a new 60-day period would start to run? No. For it to have that effect, we have to impose some legal consequences on the city, and it did not. I think they concede in the reply brief that it says nothing as to any of the topics they're addressing, but implicitly, by not addressing those topics, you've rejected our reconsideration request. And that gets back to this court's decision in improper products decades ago, where it said that you can't simply repeatedly request reconsideration and keep restarting recession of limitations. So, if this court accepts the FAA's position in this case, and the city gets... Pardon? And the city... I'm hearing something. The city obtains no relief in terms of, for example, a remand for the agency to reconsider, address, whatever. Then, what is the option available to the city to get FAA to reconsider these flight plans? I'm just not sure what it is. I mean, 30 days from now, when FAA says we're not changing anything, and the city has to come back to court? I think the city has already... And then we'll get the 60-day argument all over again? I mean, the city has already, I think, provided the FAA what information it believes requires reconsideration, and the FAA has already been through that. No, no. But... No, in Fairness Council, the city submitted information, and there has been no response. That's true, Your Honor. I can represent to you that it has been considered. No, no, no. That represents... Okay. They only give me what's in the record. What I'm trying to understand is what happens now? Just hypothetically. Everybody in Phoenix is up in a roar about these flight paths. I mean, given that there are no procedures for this? That's right. They can resubmit their request? Require a response? They've already sent it. They can't require... And the FAA can... Counsel, they can't require a response. That's true, Your Honor. I don't know. I mean, the FAA can send a written response. So there is nothing... There is nothing the city can do, because it's lost in court. The city has... And the only thing it can do is, what, the next election vote? I mean... Unless there is new information that the original understanding of environmental effects was wrong in some fashion, then... Well, your own representative told the city that they had underestimated the impact, but they didn't realize. So... And he was clearly talking about the fact that there was a public uproar, that we asked the city's representative and the airport authority, do we expect... Counsel, do you understand the difference between the FAA sticking to its substantive position and having some process? I don't understand the process here. Does the city of Phoenix have to go to Congress and get Congress to pass a statute telling the FAA to consider the city of Phoenix's concerns? No, it doesn't have to do that. I mean... No, it doesn't have to, but how does it... How does it get anything... Your Honor, I appreciate your concern for the people of Phoenix, but I think that the answer to my question... No, I'm not concerned only for the people of Phoenix. I'm concerned generally about a federal agency making decisions that affect people's lives where officials who have policymaking responsibilities have no prior notice. And then when they seek to have the federal agency review what it's done, they get a lot of nice language, but no substantive response. And have they, in fact, gone to Congress and received some relief? Did you hear Judge Griffith? I didn't. I'm sorry. Judge Griffith... I'm sorry. I'm asking Counsel, has the city of Phoenix actually gone to Congress about this and gotten some relief? And I couldn't find anywhere in the record that the FAA ever provided the report that Congress directed that it provide within 90 days of the legislation about this issue. Did I miss it, or what happened there? What can we make of congressional involvement in this dispute? The response to the newer legislation, of course, is not in the record, because it's all years after the decision that's in dispute before this court. I am informed that that report is still being worked on, and I think we can expect it forthcoming. But I think that it's a mistake to retroactively impute a later congressional action to the legality of the FAA's decision. There's nothing in the record or any debrief about that for the congressional action. That's right. Correct. That's not relief. No. This is all in the context of my question. If your position in this court were to be accepted by the court so that the petitions are denied... Let me answer this very carefully. My position in this case, and the FAA's position in this case, is specific to a situation where you have anticipated environmental impacts below any threshold of concern established by duly promulgated regulation, and no evidence to the contrary. They submitted other evidence based on other methodologies, but there's no serious challenge to the DNL metric or its application here. In any other circumstance where you have an expectation of the possibility of significant environmental impacts under NEPA, adverse effects under the National Historic Preservation Act, those would all be very different cases. The agency would have different obligations. It would have more obligations to consult, more obligations to document and publicly disclose anticipated environmental impacts. All of those cases would be different than the situation in Phoenix, where there is no doubt the people in Phoenix that are experiencing increasing noise are very upset about the increase in noise. The city's mistake, as it were, in your view, was not to cite the NEPA statute in its request for reinitiation? No. The city's mistake was not to petition for review right away. Petition in court. Yes. That is a statutory obligation if it ever seeks to get remedy from a court. Maybe the agency, since it hasn't promulgated any regulations about anything, ought to let entities know. In formal decision notices that are accompanied by bigger environmental impacts, like an environmental assessment, you do see that language. That's part of the language. My point is this process is designed so that you avoid all of those obligations. You don't need an EA. You don't need an EIS. You have a categorical exclusion. Yes, and a categorical exclusion is, by definition, a decision where there's no environmental impacts of concern and nothing more needs to be done under the federal environmental statute. Categorically excluded actions are taken all the time by federal agencies. There are innumerable such actions, and this court has been clear that an agency's order can take many forms. It is concerned about the legal consequences on petitioners and not whether it contains boilerplate language or whether it looks like an order. That law is clear, which was what makes the publication and implementation of these procedures the order and not the prior environmental reports by the agency because those were an issue. Once the public was aware that flight paths had changed, and they most certainly were aware immediately, both the city and the historic neighborhood petitioners knew of it, the statute authorized by Congress gave them 60 days to proceed in this court, and having failed to comply with that statute of limitations, they now do not have the option of judicial review of the agency's decision. And the reasonable exception? Reasonable grounds. Reasonable grounds exception would only arise when? In this court's cases, it's arisen where the agency told people to completely ignore its own advisory circular. That would be wrong, right? I understand the factual context in those cases, but I'm trying to understand the principle underlying those cases. So the principle in that case, that was a really unique set of circumstances. Right, it was. Paralyzed Veterans is a better example of this, where they were too late to challenge the initial decision, but the agency issued a new decision amending the suspect decision. Petitioners filed within 60 days of that new amended decision, and they were able to seek judicial review. So one last question, counsel, I hope, is counsel for petitioners mentioned that after September 14th, when the FAA indicated, these are my words, not counsel's, that apparently the planes weren't following the path they should, so the FAA was going to tell the planes to follow the correct path, that some procedures were changed, but that the city has not been able to find out what those procedural changes were. Now, first, do you represent that procedural changes were made? No, they weren't. All right. What was changed was the FAA gave better instructions to the air traffic controllers to make sure that the procedures published in September were actually complied with. There's a picture of this, actually, on page 17 of their brief, where you can see all the planes deviating. That deviation is a week after the procedures. That's all gone now. They don't do that anymore, and they follow the procedures as required up that commercial corridor, and that was the change made in the fall after the September decision. There were no changes to the procedures themselves. So if you understand what I'm getting at is where the you said just better instructions. The map says go route 4, and in fact, they're going route 3. So what would the instructions say other than you have to go route 4? Well, what happens is the map says go route 4, the pilots start going route 4, and they would get instructions from the tower that said, okay, you can turn now and head towards your destination. You don't have to go all the way to the end of route 4 where you would normally turn. You can turn early and go more directly to your final destination. And the air traffic controllers sometimes have to do that to get planes out of the way of one another, to deconflict them, and sometimes they'll do it if they can just to make the flights more direct. That latter version of the instructions where they might just do it discretionarily, but we told them not to do any more, to preserve the route as it's charted and to fly farther up that route. The historic neighborhood petitioners mentioned that the flights are directly overhead. That's actually inaccurate. They're directly overhead. There were some changes, counsel. There were some changes in the way, as your Honor put it, it was a compliance issue. There were changes in the way that the pilots were. What you just described is telling the air tower people they could no longer exercise their discretion. In some limited fashion, yes. Well, isn't that a change in procedure? No, the procedures account for the discretion of air traffic controllers. That's built into the procedure. The procedure charts the path of the plane, but there will always be the potential for the need to vary off that path in certain circumstances. But now you're telling me they no longer have that authority to exercise discretion. Well, they were instructed not to use it. I don't want to overstep the strength of the instruction. No, but I'm trying to understand what's going on here, that if I have discretion and then the agency tells me I have no discretion in that regard as to issue one, isn't that something new in the sense of a change? Well, potentially. I hesitate for two reasons. One is I haven't seen a transcript of what was told to the air traffic control tower and they're very particular about what their authority is. I don't want to misrepresent exactly what was told to them. I can tell you that the procedure itself, the way that it was designed and intended to be flown, was never changed. And it was accepted that that was a new change in November. Well, you can't represent that if you don't know what was told by it, what FAA told the air traffic controllers. But part of what the- Suppose the instructions were, although our previous instructions said one thing, now we're telling you something different. I can tell you it was not that. Well, you haven't seen it. No, I haven't seen it. It was a conversation, but I have talked to the FAA officials involved. So there's no transcript, right? No, of course not, no. No, I thought you said you hadn't read the transcript. Right, there is a transcript. Be careful here, counsel. I'm just trying to understand what's going on. Because if you change the procedures, whereas I had discretion and now my discretion is limited- A change to the procedures would require- The charts also come with instructions to pilots. It would require some change in that. There was no change in that. The pilots may have been deviating on their own, and that was part of what was made sure the air traffic controller was part of it. Your bottom line basically is whatever deviations and changes there were, were simply, as Judge Santel's earlier question suggested, conformance changes. That is the bottom line. And the second bottom line is we notified the city in November that we had this conversation and that the pilots and air traffic controllers were coming into compliance. If they considered that a new challenge, they had 60 days to challenge that, and needless to say, that didn't happen. So whether that constitutes a legal change in the procedure and a new order doesn't alter the outcome in this case at all. Anything further, Judge Griffith? No. All right. Thank you. Thank you, Your Honor. Thank you. All right. Town poll for the city. We'll give you a couple of minutes here. Thank you, Your Honor. I'll start with that last point. The best place to look to see what the agency did is in joint appendix page 609, which is the November 14, 2014 letter, and it does not describe it in the same way that counsel just described, and we were not able to ascertain from the record and from FOIA exactly what they did. The key here, though – But your point is you think they did something. They did do something. But do you hear that 60 days have to start running then? And that brings us back to the point that they said we're not done yet. We're continuing to work with you. We'll continue to work with you to implement more changes to address noise. That's not what I said either, is it? It is actually – Your language is not clear, correct? It's not precise, but they did indicate that they were going to work with them to seek possible adjustments to the routes and the procedures to address the noise concerns of the city in a more precise language. The flip side that the city is addressed with is there are dozens of these routes adopted at airports around the country, each one of those airports, hundreds or thousands. I think their rule would be that we need to file a petition for review in every one of those before we ascertain what the impact of those routes would be when they're categorically excluded. No, they're saying, as of September 14th, you knew the routes had changed. And if you want the FAA to do anything, you have to come to court. The FAA is doing it. And the court has to try to figure out, and you have to figure out, in advising the court in your briefs, what should happen next. The tricky thing about that is you've got a situation where there's no record, there's no real rule about the decision-making that was done in this case, and a situation where they're still making changes to those, and the practical implication that once you file a petition for review, the agency doesn't talk to you anymore. You talk to the agency's lawyers. And so the practical ability to actually implement change goes away, and it's actually counterproductive at that point to actually trying to exhaust any administrative review, which is they're the experts. They're the ones who have the environmental information, safety information, and the understanding of how the airspace works. Okay, counsel, counsel, all of those difficulties suggest that you should have filed a suit. Why not do that? Why didn't that happen? I think it's a clear memory of our counsel that to protect your rights, you better file a suit. And this is a practical argument about that. You just gave. And in this case, Your Honor, I have not had a situation where both the administrator of the FAA and the regional administrator has been quite aggressive in saying, we are not done in making changes with this procedure and this rule. We hear you, we're going to hear you, and we're going to make changes in result. And I think it was the city's view that it had to exhaust that administrative opportunity before. Your appointing counsel for FAA says that if we were to apply the reasonable grounds exception here, it would be a distortion of our practice. That's not what it is, what it looks like. But it would be an extension of our practice beyond anything that we've done thus far. Will you respond to that? Did you get to form your best argument for why the reasonable grounds exception ought to apply here? So I actually think this comes very close to paralyzed veterans, where you had a situation where the D.C. Circuit noted that the party in that case, the paralyzed veterans group, knew that the rule was open. It did not know the full extent of changes that would be made, and it reasonably waited to exhaust its administrative arguments. I'd also note Freedman v. FAA, which the court decided in November after briefing was concluded in this case, a similar sort of situation where the agency wouldn't make a decision on a particular application related to a pilot's medical condition in that case, kept it open, and essentially had a constructive denial very similar to what we saw in this case, where they just would not address the historic impacts, certainly on the record, that the city identified in this case. I think those are the two best cases that we have. I think safe extensions is another good example of a case. Would you write the rule for us? This is what Ben Rogers was trying to get from FAA counsel. What's the principle that would underlie our reasonableness? I'm sorry, Your Honor, I wasn't able to make out your question. He's asking what are the principles underlying those authorities that you cited, because the FAA responded that they don't apply here. So the principle of those decisions, there's two pieces. One is that you have to have the confirmation of the agency's decision-making process, and two, legal obligations or responsibilities that flow from that. Certainly there have been impacts that have flown from this since the implementation of the rule. However, I would argue that until June 1, 2015, we did not know for sure that FAA would not address our request for reconsideration under the National Historic Preservation Act, and that's a procedural right that we believe we have. That's a procedural obligation that they have, and obligations and impacts flow from it. In terms of the question about the other problem, that's the one where the city, I think, was in the toughest position. There has to be the confirmation of the agency's decision-making process. The agency repeatedly told the city, we counted at least five indications in the record, that they're not done with the process, that they're considering further changes. They're considering to work on this issue to try to address the city's concern, and in that face, we did not believe that the agency had consummated its decision-making process and that there was actually more in common. I'd like to move on to a couple of other issues that the counsel for the FAA had raised, and I think one important misconception, which is the notice that was provided to the city prior to these routes being implemented. And there's a few important issues. First, the obligation under 36 CFR, section 800.2C1, provides that the agency needs to reach out to the official with jurisdiction over the historic resource. In no stretch of the imagination could they imagine a low-level employee of the airport Is that regulatory language or is that your paraphrase? Is that regulatory language or is that your paraphrase? I'm paraphrasing. Give me the regulatory language. Yes. Please. Give me the regulatory language. I will pull that back. I don't think reach out to is in there, for one thing, except in what it says. That's correct, but if you were to take a look. Give me what it says, please. It says, a representative of a local government with jurisdiction over the area in which effects of an undertaking may occur is entitled to participate as a consulting party. So in what way did they prohibit any state official from participating? That's not the notice provision. That's the participation provision. That to whom other than the departments that are charged with site on airports and noise, were they supposed to send notice to, whether it gets in the hands of a bureaucrat or a secretary, to whom are they supposed to send notice to that they didn't send notice to? So the person that they would send notice to is the city historic preservation officer. The city has an identified person that Department of Transportation consults with all the time, that FAA consults with all the time for any historic-related issues that touch upon the city of Phoenix. So if there is – Did that person not have notice to hear what was going on? That person did not have notice. The only person with is one low-level person within the aviation department. Their guidance about – So they weren't entitled to any word of change from the person who received it. We use this low-level term, but it's a person who is an exposed person in the department that had relevance to this event, right? They had attended some meetings, and they received emails and phone calls from the FAA. That is true. And so there's two issues. One is, what person do you choose within the department? And then, what department? If I'm trying to give FAA notice of a particular issue, I don't reach out to the Coast Guard. Neither did you give the Secretary of the Department of Transportation. In this case, and it's actually addressed in some of the comments that the city provided to FAA, the normal practice of FAA when they were talking about airspace and air traffic control issues was to actually reach out to the executive director of the airport or to one of the deputy directors who has been in charge of operations. They made a different decision here, and they chose a particular person. And I'd like to just highlight that. Well, we're both using that time that you all spent running out of it, so unless the presiding director wanted to go further, I frankly would just assume me. Right. Yeah. Any – you said you had a couple of points. That's one point. What's the second? The second point was really to point out the nature of the communication with that low-level employee. If you were to take a look at Joint Appendix 307 and take a look at the communication with that employee, they clearly identified, I'm not the person to talk about NEPA issue. And, in fact, to use a direct quote, I'm just an aircraft dude. And I think in that case where they persist in using this person's point of communication on a very important and controversial issue for a person who's clearly indicated, I'm just an aircraft dude, it really raises a number of questions about how important they'll provide. And it's important to consider because they're not providing any other notice to the public or to the city. The importance of getting that right in a categorical inclusion context is critical because this is the only chance that they had. With that, I would just like to say there are manifold procedural deficiencies that we've identified in our briefs. I believe they clearly call for vacating the roots at question here and remanding back to the agency for further proceedings. Thank you. Thank you. All right. Counsel for petitioner, do you want to take a minute? Thank you, Your Honor. Matthew Adams for the servant neighborhood petitioners. I'd like to make two quick points. The first one responding to FAA counsel's arguments about the significance of the impact or the perceived significance determining the scope of the consultation. And briefly, I would just direct the court's attention to 40 CFR 1508.27, subsection V, subpart 4. What was the site? 15 what? I'm sorry, Your Honor. It's 40 CFR 1508.27. 1508.27. Seven. Seven, thank you. Before. Before. And the reason why that is significant is that is a provision that says that the definition of significance under NEPA actually includes the concept of public controversy. In other words, a highly controversial action can be a significant impact, can have a significant impact. The second point, Your Honor, is just to further follow up on the reasonable grounds. This is not a case like National Federation of the Blind where we filed in the wrong court, and it's not a case where we ignored a letter saying filed by mid-November or else. We were told that decision making was ongoing, and we were told that on a couple of different occasions, including the December meeting that counsel for the FAA has proposed as an alternate end point today. So even if the decision making was final in September, which we dispute, and even if the city knew that fact, which we also dispute, there will still be reasonable grounds. And in terms of principles, I guess we would sum it up as follows. As a general matter, the court has found reasonable grounds where a petitioner delayed filing based on agency representations that a decision making process was ongoing. And that reaches both safe extensions and paralyzed veterans, and I think it excludes cases like National Federation of the Blind and also electronic primacy. All right. Thank you. Thank you, Your Honor. We will take the case under advisement.
judges: Rogers, Griffith, Sentelle